# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TANGELL WILLIAMS, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 1:18-CV-05522 |
| v. ) ) | Hon. Jorge L. Alonso |
| MOLINA HEALTHCARE, INC., and ) MOLINA HEALTHCARE OF ) ILLINOIS, INC., ) ) | |
| Defendants. ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION

GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Attorneys for Defendants Molina Healthcare,
Inc. and Molina Healthcare of Illinois, Inc.

Of Counsel and On the Brief:
Robert H. Bernstein
(admitted *pro hac vice*)
Michael J. Slocum
(admitted *pro hac vice*)

## PRELIMINARY STATEMENT

Defendants Molina Healthcare, Inc. and Molina Healthcare of Illinois, Inc. (jointly, "Molina" or "Defendants") respectfully submit this brief in opposition to Plaintiff Tangell Williams' motion for conditional certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). For the reasons detailed below, conditional certification is improper and Plaintiff's motion should be denied.

Initially, Plaintiff seeks to certify and represent a collective of which she is not even a member. Plaintiff proposes a collective defined as "[a]ll individuals *who worked as Member Services Representatives between May 3, 2016 and December 31, 2016* and had their clock-in and clock-out times rounded by Defendants for one or more full-time workweeks." (Dkt 46) (emphasis added). Plaintiff, however, ceased to be a Member Services Representative in January 2015, and resigned from Molina altogether in March 2016. Plaintiff therefore cannot satisfy the FLSA's statutory requirement that she be "similarly situated" to the members of a putative collective that, by Plaintiff's own definition, excludes her.

Plaintiff is also foreclosed from serving as the representative of the proposed collective because her individual claim is time-barred. Plaintiff last worked as a Member Services Representative in January 2015, but she did not file her Complaint until four years later, on January 28, 2019. This places her claims outside even the three-year statute of limitations applicable to "willful" FLSA violations, let alone the presumptive two-year period which should apply here. Without a viable claim of her own, Plaintiff cannot represent the proposed collective as a matter of law.

Plaintiff's application fails for other independent reasons. Certification of the proposed collective is improper because the Complaint does not contain a single allegation regarding Molina's former "rounding" policy – the sole "factual nexus" purportedly binding the alleged

collective together. Plaintiff cannot certify a collective challenging Molina's rounding policy where the Complaint does not even mention that policy.

Plaintiff's motion warrants denial for yet another reason. Even if Plaintiff is permitted to proceed under her newly-minted "rounding" theory, she fails to provide factual support for her claim on the merits. The only supposed "evidence" Plaintiff proffers to support her claim is Molina's written tardiness policy. Nothing more. But Plaintiff admits she was never disciplined for any time-related infractions during her tenure with Molina, and that she has no competent evidence that anyone else was so disciplined. Moreover, Plaintiff ignores that Molina's rounding policy frequently operated to her benefit, providing her pay for time she did not work.

In short, Plaintiff is not a member of the proposed collective, her FLSA claim is time-barred, and her rounding theory is without factual or legal support. Accordingly, Plaintiff's motion for conditional certification should be denied.

## STATEMENT OF FACTS

*Plaintiff Commences Her Employment with Molina*

Plaintiff commenced her employment with Molina on November 3, 2014. (Plf Dep. at 27:18-20).[1] Molina hired Plaintiff as a Member Services Representative III ("MSR") at its newly-opened call center in Oak Brook, Illinois. (Plf Dep. at 27:21 to 28:11, 29:14-16).

*Plaintiff's Job Responsibilities as an MSR*

As an MSR, Plaintiff's "fundamental job duties" consisted, in short, of receiving and handling routine calls from Molina members (*i.e.*, insureds) and medical service providers. (Plf Dep. at 38:9 to 39:5). The duties of an MSR are detailed in a written Job Description. (Plf Dep. at 39:12 to 40:16); (Bernstein Cert. Ex. B). That MSR Job Description lists eight "essential

---

[1] "Plf Dep." refers to the transcript of the deposition of Plaintiff Tangell Williams taken on April 12, 2019, a complete copy of which is attached as Exhibit A to the accompanying Certification of Robert H. Bernstein ("Bernstein Cert.").

duties and responsibilities" of the MSR position "in order of importance." *Id.* The first of these "essential duties" is to "[r]espond to incoming calls from members and providers excluding provider claims calls." *Id.* Other functions include, for example, "[c]omply[ing] with workplace safety standards[,]" "[d]emonstrat[ing] positive working relationships with peers[,]" and "[a]ttend[ing] meetings and training sessions as scheduled[.]" *Id.* Plaintiff confirmed that this list of "Essential Functions" accurately described her duties as an MSR. (Plf Dep. at 40:1-7).

*Molina Promotes Plaintiff to a New "Lead" Position with Different Duties*

When Plaintiff started at Molina's Oak Brook facility in November 2014, no one held a Lead Member Services ("Lead") position. (Plf Dep. at 43:14-20). Effective January 19, 2015, Molina promoted Plaintiff into the Lead position. Plaintiff held this job continuously through the remainder of her tenure with Molina. (Plf Dep. at 53:2-4, 58:19 to 59:9).

A Lead's responsibilities are likewise detailed in a written Job Description. (Plf Dep. at 58:19-25); (Bernstein Cert. Ex. C). Unlike the MSR position, responding to routine member and provider calls is not among the "essential duties and responsibilities" listed on the Lead Job Description. *Id.* Instead, the Lead Job Description identifies six different "essential duties and responsibilities" of the role (again, "in order of importance[.]"). *Id.* The fifth of these is to "[h]andle elevated supervisor calls." *Id.* None of the previous four responsibilities mention "calls" or explicitly telephone-related responsibilities. *Id.* Plaintiff confirmed that this list of "Essential Functions" likewise accurately described her duties as a Lead. (Plf Dep. at 59:24 to 60:5).

*Plaintiff Resigns Her Employment with Molina*

Plaintiff remained a Lead at the Oak Brook call center until March 11, 2016, when she voluntarily resigned her employment with Molina. (Plf Dep. at 23:11-14, 59:7-9). Plaintiff

3

never worked at a Molina call center other than the Oak Brook facility. (Plf Dep. at 110:4-6). And the Oak Brook call center where Plaintiff worked has since closed. (Watts Dep. at 63:23 to 64:4). [2]

*Molina's Rounding Policy*

Prior to January 2017, Molina utilized a "7/15 rounding rule" under which it rounded employees' clock-in and clock-out times to the nearest quarter hour. As Sandra Watts, Director for Member and Provider Contact Center (and Molina's designated Rule 30(b)(6) witness), confirmed at deposition, the policy was facially neutral, and Molina applied it neutrally. Ms. Watts testified:

> **Q. Okay. And tell me what that rounding policy was.**
>
> A. My understanding is that it was a 7:15, so basically it was rounding in quarterly increments, quarterly hour, quarters of the hour increments. So if the time was seven minutes or less, it rounded down, and if it was eight minutes or greater, it rounded up to the nearest quarter hour.
>
> **Q. So use an 8:00 A.M. scheduled start time. … And apply the rounding policy you just described.**
>
> A. Employee clocks in at 7:53. Their start time would be rounded to 8:00 A.M.
>
> **Q. And give me an example post 8:00 A.M.**
>
> A. If the employee clocks in at 8:06, they would be paid as of 8:00 A.M.
>
> **Q. So the second example you gave me, that's an instan[ce] where the employee got paid for six minutes he or she did not work, correct?**
>
> A. Right.
>
> **Q. And the first example you gave me, that's an instance where the employee did not get paid for seven minutes they did work?**
>
> A. Right.

---

[2] "Watts Dep." refers to the transcript of the deposition of Sandra A. Watts taken on March 27, 2019, a complete copy of which is attached as Exhibit D to the accompanying Bernstein Cert.

4

(Watts Dep. 134:9 to 135:9).

Plaintiff's own Time Detail confirms both this facially neutral policy and its neutral application. (Bernstein Cert. Ex. E). For example:

- On February 3, 2015, Plaintiff clocked in at 8:00 a.m. and clocked out for lunch at 12:21 p.m. Her total credited time for that morning was 4.25 hours (4 hours, 15 minutes), even though she worked 4 hours and 21 minutes, because the 12:21 clock-out time was rounded back to 12:15. That same afternoon, however, Plaintiff clocked in from lunch at 12:51 p.m. and clocked out for the day at 4:30 p.m. Plaintiff's total credited time for that afternoon was 3.75 hours (3 hours, 45 minutes), even though she only worked 3 hours and 39 minutes, because the 12:51 clock-in time was rounded back to 12:45. *Id.*

- On February 15, 2015, Plaintiff clocked in at 7:45 a.m. and clocked out for lunch at 12:40 p.m. Her total credited time for that morning was 5 hours, even though she only worked 4 hours and 55 minutes, because the 12:40 clock-in time was rounded forward to 12:45. That same afternoon, Plaintiff clocked in from lunch at 1:10 p.m. and clocked out for the day at 4:30 p.m. Her total credited time for that afternoon was 3.25 hours (3 hours, 15 minutes), even though she worked 3 hours and 20 minutes, because the 1:10 clock-in time was rounded forward to 1:15. *Id.*

A chart illustrating these two examples follows:

| DATE | A.M. CLOCK-IN | LUNCH CLOCK-OUT | LUNCH CLOCK-IN | P.M. CLOCK-OUT | TIME WORKED | TIME CREDITED |
|---|---|---|---|---|---|---|
| 2/3/15 | 8:00 a.m. | 12:21 p.m. | | | 4 hrs., 21 min. | 4.25 hrs. |
| 2/3/15 | | | 12:51 p.m. | 4:30 p.m. | 3 hrs., 39 min. | 3.75 hrs. |
| 2/15/15 | 7:45 a.m. | 12:40 p.m. | | | 4 hrs., 55 min. | 5.0 hrs. |
| 2/15/15 | | | 1:10 p.m. | 4:30 p.m. | 3 hrs., 20 min. | 3.25 hrs. |

In December 2016, Molina changed its policy, and began recording employees' time "to the minute" for purposes of calculating payroll. (Watts Dep. at 137:17-23).

*Molina's Tardiness Policy*

Molina formally considered an employee's clocking-in one minute late to be a "tardy." (Watts Dep. at 101:12-23; 106:7-19). But, as Shakespeare's Hamlet would put it, this was a

5

policy more honored in the breach than in the observance. Ms. Watts testified that she "witnessed hundreds of situations where an employee is not feeling well or has to call their child's school or has a myriad of circumstances that result in them being late from a lunch or a break and it is excused." (Watts Dep. at 107:13-17). Andy Hom, Plaintiff's Supervisor, who managed MSRs and, in turn, reported to Ms. Watts, likewise confirmed that Molina did not enforce the tardiness policy as written. (Hom Dep. at 23:11 to 24:4).[3] Indeed, Molina **never** disciplined Plaintiff during the entire course of her employment for **any** time or tardiness issues. (Plf Dep. at 147:24 to 148:3).

## PROCEDURAL HISTORY

On August 13, 2018, Lashay Robinson filed the initial Complaint in this matter. (Dkt 1). On January 28, 2019, Ms. Robinson and Plaintiff Williams jointly filed an Amended Complaint (the "Amended Complaint"). (Dkt 32). On February 11, 2019, the Court granted Ms. Robinson's motion to voluntarily withdraw, leaving Plaintiff Williams as the sole putative class representative. (Dkt 36).

The Amended Complaint asserts claims under the FLSA on behalf of "[a]ll persons who worked for Defendants as telephone-dedicated employees, however titled, and who were compensated, in part or in full, on an hourly basis throughout the United States at any time between August 13, 2015 and the present who did not receive the full amount of overtime wages earned and owed to them." (Dkt 32) at ¶ 59. Briefly, the Amended Complaint alleges that Defendants "knowingly required" Plaintiff "and other similarly situated telephone-dedicated employees" to perform unpaid work before and after their scheduled shift times including "booting up computers, initializing several software programs, and reading company issued

---

[3] "Hom Dep." refers to the transcript of the deposition of Andy Hom taken on March 28, 2019, a complete copy of which is attached as Exhibit F to the accompanying Bernstein Cert.

emails and instructions." *Id.*, ¶¶ 15-30. The Amended Complaint contains no allegations respecting Molina's former time-rounding policies or practices.

On May 8, 2019, Plaintiff moved to conditionally certify a collective under the FLSA comprising "[a]ll individuals who worked as Member Services Representatives between May 3, 2016 and December 31, 2016 and had their clock-in and clock-out times rounded by Defendants for one or more full-time workweeks." (Dkt 46).

## LEGAL ARGUMENT

### I. Plaintiff's Motion Should Be Denied Because Plaintiff Is Not Similarly Situated to the Members of the Proposed Collective

Plaintiff's request that the Court conditionally certify a FLSA collective defined as "[a]ll individuals who worked as Member Services Representatives between May 3, 2016 and December 31, 2016" fails because Plaintiff cannot, as a matter of law, serve as the representative of the proposed collective. In short, Plaintiff is not "similarly situated" to the members of the proposed collective because she is not an individual "who worked as [a] Member Services Representativ[e] between May 3, 2016 and December 31, 2016." Indeed, Plaintiff did not work for Molina *at all* during that period, having resigned two months earlier in March 2016.

To represent a putative FLSA collective, Plaintiff must be "similarly situated" to the putative collective she seeks to represent. 29 U.S.C. § 216(b). *Cf. Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, (N.D. Ill. 2011). This prerequisite "is not a mere formality." *Walker v. Health & Hospl Corp.*, 2016 U.S. Dist. LEXIS 170525, *32 (S.D. Ind. Dec. 9, 2016). To the contrary, it is well established that plaintiffs seeking conditional certification must affirmatively demonstrate "similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present."

7

*Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 722-23 (N.D. Ill. 2012) (quoting *Russell v. Ill. Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 812 (N.D. Ill. 2010)); see also *Sjoblom v. Charter Commc'ns., LLC*, 2007 U.S. Dist. LEXIS 93879, *26-27 (W.D. Wisc. Dec. 19, 2007) (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (explaining that proposed collective representative must offer facts "sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law").

Multiple courts have found inadequacy of representation to be critical to the determination of whether to certify a proposed FLSA collective. *See, e.g., In re FedEx Ground Package System, Inc. Employment Practices Litigation*, 662 F. Supp. 2d 1069, 1081-82 (N.D. Ind. 2009), *rev'd on other grounds*, *Slayman v. FedEx Ground Package Sys.*, 765 F.3d 1033 (9th Cir. 2014). Where, as here, a proposed representative plaintiff is not a member of the putative collective she seeks to represent, certification must be denied. *See In re FedEx*, 662 F. Supp. 2d at 1082; *Collazo v. Forefront Educ., Inc.*, 2010 WL 335327, * 4 (N.D. Ill. Jan. 28, 2010).

The opinion in *In re FedEx* is particularly persuasive in this regard. There, two "original named plaintiffs, Troy Givens and Clarence Dalcour," sought conditional certification of an FLSA collective comprising truck drivers who drove more than 40 hours in a workweek and "operated, at any time after August 10, 2005, vehicles with a gross vehicle weight rating of less than 10,001 pounds[.]" 662 F.Supp.2d at 1080-82. Because "[p]roblems exist[ed] regarding the adequacy of these named plaintiffs as representatives of this putative class[,]" *id.* at 1082, the Court denied certification. The Court reasoned:

> First, the original named plaintiffs … lack standing to pursue FLSA overtime claims on a representative basis **because they don't meet the proposed class definition**. Neither Mr. Givens nor Mr. Dalcour drove vehicles weighing less than 10,001 pounds after August 10, 2005. … Because Mr. Givens and Mr. Dalcour don't meet the class definition …, they aren't similarly situated to the

8

putative class members they seek to represent. Therefore, the named plaintiffs don't have standing to pursue FLSA claims on behalf of the putative class.

*Id.* (citations omitted) (emphasis added).

The Court's decision in *Collazo* is equally compelling. Plaintiffs there alleged violations of the FLSA's overtime requirements, and sought "conditional certification of a class that would include [employees] in both Florida and Illinois." 2010 WL 335327, at * 2. The Court denied plaintiffs' motion respecting a Florida collective, because "[n]one of the five proposed class representatives worked at Defendants' Florida locations." *Id.* Plaintiffs thus could not be part of, let alone represent, a class of Florida employees.

Here, Plaintiff admits Molina promoted her from MSR to Lead on January 18, 2015. (Plf Dep. at 53:2-4, 58:19 to 59:9). Plaintiff further admits she resigned from her employment with Molina *entirely* on March 11, 2016. (Plf Dep. at 23:11-14, 59:7-9). Thus, as of May 3, 2016 (the beginning of Plaintiff's defined collective period), not only was Plaintiff no longer working as an MSR, she was no longer a Molina employee in *any* capacity.

As Plaintiff is indisputably not a part of her proposed collective, she cannot represent its members as a matter of law. Plaintiff's request to certify the proposed collective must therefore be denied.

## II. Plaintiff's Claim Is Time-Barred

Plaintiff is further an inadequate representative because her individual claim is untimely, and therefore barred as a matter of law. Plaintiff thus lacks standing to represent her proposed collective.

"A plaintiff must bring an FLSA claim 'not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.'" *Sampra v. U.S. Dep't of Transp.*, 888 F.3d 330, 332 (7th Cir. 2018) (quoting 29 U.S.C. § 2617(c)(1)). This period may

9

be extended to three years from the date of the alleged violation, but only in those limited circumstances where a plaintiff establishes the employer acted "willfully." *Sampra*, 888 F.3d at 332 (citing 29 U.S.C. § 2617(c)(2)). An action under the FLSA "shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action … it shall be considered to be commenced in the case of any individual claimant … on the date when the complaint was filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought[.]" *Bowen v. Ill. Bell Tel. Co.*, 2016 U.S. Dist. LEXIS 4903, *5 (N.D. Ill. 2016) (quoting 29 U.S.C. § 256).

Here, Plaintiff proposes a collective she expressly limits to include ***only*** "Member Services Representatives." Plaintiff last worked as an MSR on January 18, 2015. Plaintiff's FLSA claims, as defined by her proposed collective, thus accrued on January 18, 2015 at the latest, when Molina promoted her to Lead. Even assuming that the extended three-year period for "willful" violations applies (and Plaintiff offers no evidence to suggest that it should), Plaintiff would have had to file her claim by January 18, 2018. Because Plaintiff did not file the Amended Complaint until more than a year later, on January 28, 2019, her claim is untimely.

This defect is fatal, as confirmed by the decision in *Collazo*. Reaffirming the importance of issue of adequacy of representation in determining whether to certify a putative FLSA collective, the *Collazo* court held that two proposed plaintiffs whose own claims were time-barred could not represent a putative FLSA collective. *Collazo*, 2010 WL 335327, at * 4. The Court reasoned:

> In this case, [plaintiffs] Dukes and Parker apparently ended their employment at ISHC on October 19, 2005. Parker filed his notice of consent on October 20, 2008; and Dukes filed hers on October 27, 2008. Thus, ***even if the conduct at issue was willful*** …, those actions appear to be barred by the statute of

10

>limitations. … [Thus], neither Dukes nor Parker can adequately represent the class.

*Id.* (emphasis added).

An FLSA collective action "may not proceed without a plaintiff to lead it." *Copello v. Boehringer Ingelheim Pharms., Inc.*, 812 F. Supp. 886, 897 (N.D. Ill. 2011) (citing *In re Family Dollar FLSA Litg.*, 637 F.3d 508, 519 (4th Cir. 2011) (explaining that "[w]ithout a viable claim, [a] plaintiff cannot represent others whom she alleged were similarly situated")). Put another way, a determination that a named collective action plaintiff's individual claim lacks merit "disqualifies the named plaintiff[] as [a] proper class representative[]" and requires denial of class certification. *Chavez v. Ill. State Police*, 251 F.3d 612, 630 (7th Cir. 2001) (citing *Cowen v. Bank United of Tx.*, 70 F.3d 937, 941 (7th Cir. 1995)).

Here, as Plaintiff's individual FLSA claims are plainly time-barred, she cannot serve as the collective representative. Certification of the proposed collective must therefore be denied.

### III. The Amended Complaint Includes No Allegations Pertaining to "Rounding," and Plaintiff Therefore Cannot Advance a Collective "Rounding" Claim

Even if Plaintiff were a member of the proposed collective, and even if her claim were not time-barred, certification should still be denied because Molina's former rounding policy – the only "factual nexus" Plaintiff offers to bind the collective together – appears nowhere in the Amended Complaint. Plaintiff's request to certify a collective based upon a theory not alleged in her Amended Complaint requires denial.

A FLSA plaintiff cannot represent a collective on claims arising from an employer's policy where she does not allege any injury resulting from the policy in her complaint. *Forney v. TTX, Co.*, 2006 U.S. Dist. LEXIS 30092, *9-10 (N.D. Ill. Apr. 17, 2006); *see also Murillo v. Berry Bros. Contractors, Inc.*, 2019 U.S. Dist. LEXIS 9467, *8 (W.D. La. Jan. 17, 2019) ("A successful FLSA complaint must allege facts supporting the conclusion that all potential

11

plaintiffs were victims of a common policy or plan that violated the law"); *Hart v. JPMorgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 175983, *7 n. 8 (M.D. Fla. Dec. 12, 2012) (noting that plaintiffs may not seek conditional certification of FLSA claim based on theory not plead in complaint). In the absence of *any* allegation in the Amended Complaint concerning Molina's former rounding policy, Plaintiff cannot certify a collective based upon the collective's alleged treatment under the policy.

## IV. Even If the Amended Complaint Included Rounding Allegations, the Record Is Devoid of Evidence to Support Plaintiff's Claim It Violated the FLSA

As set forth above, the Amended Complaint is devoid of allegations concerning the rounding policy that Plaintiff alleges constitutes the common factual nexus supporting certification of the proposed collective. That alone constitutes grounds to deny certification. However, even if the Court were to accept Plaintiff's naked statements about Molina's rounding policy, Plaintiff has failed to adduce any evidence that the former policy violated the FLSA.

Federal regulations expressly permit rounding in quarter hour increments "provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b). The Ninth Circuit Court of Appeals' opinion in *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069 (9th Cir. 2016) is particularly instructive in this regard. In *Corbin*, the court addressed a Kronos timekeeping system (similar to the one at issue here) that rounded to the nearest quarter hour. The *Corbin* court rejected the plaintiff's argument that a rounding policy is violative of the federal rounding regulation simply because an employee occasionally loses compensation due to the rounding policy. *Id.* at 1078.

Consistent with *Corbin*, other district courts have found that an employer's rounding practices comply with § 785.48(b), and therefore do not unfairly harm employees in violation of

12

the FLSA, if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment. *See, e.g.*, *Bustillos v. Bd. of Cty. Comm'rs*, 2015 U.S. Dist. LEXIS 162697 (D.N.M. Oct. 20, 2015) (rounding policy did not violate the FLSA where "undisputed evidence show[ed] that the rounding policy favored neither over[]nor underpayment"); *Contini v. United Trophy Mfg., Inc.*, 2007 U.S. Dist. LEXIS 42510 (M.D. Fl. June 12, 2007) ("time clock rounding was equally applied to all Defendant's employees and worked both to the benefit and detriment of the employees" and therefore did not violate the FLSA"); *East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998) (employer's rounding policy complied with 29 C.F.R. § 785.48 where it did not credit employees for all the time they worked, but also credited them for time not actually worked).

As described above, Molina's former rounding policy indisputably favored neither overpayment nor underpayment on its face. Nor can Plaintiff demonstrate that the rounding policy worked to Molina's consistent advantage as a consequence of the tardiness policy. Ms. Watts and Mr. Hom – to whom Plaintiff personally reported – both confirmed that they did not enforce the tardiness policy as written. (Watts Dep. at 106:20-24); (Hom Dep. at 23:11 to 24:4). Rather, as Ms. Watts testified, tardiness was excused without discipline in "hundreds of situations where an employee is not feeling well or has to call their child's school or has a myriad of circumstances that result in them being late from a lunch or a break." (Watts Dep. at 107:13-17). And Plaintiff admitted that she was ***never*** disciplined during the entire course of her employment with Molina for ***any*** time or tardiness issues (Plf Dep. at 147:24 to 148:3) – even though Plaintiff's Time Detail reflects numerous instances when Plaintiff clocked in several minutes late to begin her day. (Bernstein Cert. Ex. E) (e.g., January 6, 2015 (7 minutes late),

13

January 15, 2015 (5 minutes late), January 23, 2015 (1 minute late), March 12, 2015 (6 minutes late), September 1, 2015 (9 minutes late), and January 29, 2016 (2 minutes late)).

In short, Plaintiff cannot establish that Molina's former rounding policy violated the FLSA, and her request for conditional certification should therefore be denied. *See, e.g.*, *Adair v. Wis. Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942, *29-33 (E.D. Wisc. Sept. 11, 2008) (denying plaintiffs' motion for conditional certification of an FLSA collective action where plaintiffs failed to make a sufficient factual showing that they and the putative class members were similarly situated victims of a common illegal rounding policy); *Creal v. Group O, Inc.*, 155 F. Supp. 3d 831, 838 (N.D. Ill. 2016) ("holding than [a]n employer's rounding policy – even if applied to all employees – is [] insufficient by itself" to sustain certification of an FLSA collective.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiff's motion for conditional FLSA collective action certification.

    Respectfully submitted,

    GREENBERG TRAURIG, LLP

    /s/Robert H. Bernstein
    ROBERT H. BERNSTEIN
    A Member of the Firm

Dated: June 7, 2019

14